**DEFENDERS OF WILDLIFE, Earth Island Institute, The Humane Society of the United States, Environmental Solutions International, Animal Welfare Institute, International Wildlife Coalition, American Humane Association, Earthtrust, Greenpeace Foundation, Animal Fund, American Society for the Prevention of Cruelty to Animals, Sierra Club, Samuel Labudde, and Craig Van Note, Plaintiffs–Appellants,**

**and**

**Fund for Animals and David Brower, Plaintiffs,**

**v.**

**William T. HOGARTH, Assistant Administrator for Fisheries, National Oceanic and Atmospheric Administration, Donald L. Evans, Secretary of Commerce, Under Secretary of Commerce, Administrator of the National Oceanic and Atmospheric Administration, Assistant Secretary, National Oceanic and Atmospheric Administration, Secretary of State, Secretary of the Treasury, and Commissioner of the United States Customs Service, Defendants–Appellees.**

No. 02–1224.

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 25, 2003.

William J. Snape, III, Defenders of Wildlife, of Washington, DC, filed a petition for rehearing en banc for plaintiffs-appellants. With him on the petition was Kumar Vaswani.

Stephen C. Tosini, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, filed a response to the petition for the defendants-appellees. With him on the response were Peter D. Keisler, Assistant Attorney General; Thomas L. Sansonetti, Assistant Attorney General; David M. Cohen, Director; and Jeanne E. Davidson, Deputy Director. Of counsel on the response were Anthony P. Hoang; Wayne D. Hettenbach; and M. Alice Thurston, Attorneys, Environment & Natural Resources Division, of Washington, DC.

*ORDER*

A petition for rehearing en banc was filed by the Appellants, and a response thereto was invited by the court and filed by the Appellees. This matter was referred first as a petition for rehearing to the merits panel that heard the appeal. Thereafter, the petition for rehearing en banc, and response were referred to the circuit judges who are authorized to request a poll whether to rehear the appeal

en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition for rehearing is denied.

(2) The petition for rehearing en banc is denied.

GAJARSA, Circuit Judge, with whom PAULINE NEWMAN, Circuit Judge, joins, dissents in a separate opinion.

The mandate of the court will issue on October 2, 2003.

GAJARSA, Circuit Judge, with whom PAULINE NEWMAN, Circuit Judge, joins, dissenting from the order denying rehearing en banc.

I must respectfully dissent from the denial of the petition for *en banc* consideration of this case. The panel opinion, *Defenders of Wildlife v. Hogarth*, 330 F.3d 1358 (Fed.Cir.2003), erroneously permits the Secretary of Commerce to trump a duly enacted statute with a regulation. The panel majority does not dispute the fact that section 1413(a)(2)(B) of the International Dolphin Conservation Program Act, Pub. L. No. 105–42, 111 Stat. 1122 ("IDCPA" or "the Act") (codified as amended at scattered sections of 16 U.S.C.), is clear on its face. *See Defenders of Wildlife*, 330 F.3d at 1367 ("The IDCPA clearly requires that the backdown procedure be completed one-half hour before sunset."). Despite the panel's unanimous agreement on meaning, the majority allows the Secretary to abrogate the section by regulation. The supremacy of administrative over legislative authority is a concept foreign to our structure of government. The panel majority's construction of the IDCPA authorizing such an abrogation is therefore unconstitutional and should be so declared.

In *Clinton v. New York*, 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998), the Supreme Court found the Line Item Veto Act, Pub. L. No. 104–130, 110 Stat. 1200 (1996), unconstitutional. The Line Item Veto Act permitted the President to cancel portions of enacted laws through prescribed guidelines. Despite the clear intentions of Congress to grant the President this authority, the Court found the delegation prohibited by the bicameralism and presentment requirements of Article I, § 7 of the Constitution. According to the Court, the canceling of any provision of a validly enacted law was effectively a repeal of that provision, and " '[R]epeal of statutes, no less than enactment, must conform with Art. I.' " *Clinton*, 524 U.S. at 438, 118 S.Ct. 2091 (citing *INS v. Chadha*, 462 U.S. 919, 954, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983)). The Line Item Veto Act, which gave the President "unilateral power to change the text of duly enacted statutes," *id.* at 447, 118 S.Ct. 2091, did not satisfy those constitutional requirements. While modifications of the lawmaking process are possible, the Court explained, they may come only through the amendment procedures described in Article V of the Constitution. *Id.* at 449, 118 S.Ct. 2091.

Returning to the facts in this case, the IDCPA became law on August 15, 1997. The IDCPA implemented provisions of the Declaration of Panama, a nonbinding executive agreement entered into by the United States and eleven other countries ("the Program"). The IDCPA does not in itself apply to fishing practices. Instead, section 1413 directs the Secretary of Commerce to promulgate regulations implementing the Act's provisions. In guidance, the IDCPA further enumerates seven elements comprising the minimum permissible regulatory scheme. *See* § 1413(a)(2)(B) ("Regulations implemented under this section *shall*

include provisions ...." (emphasis added)). The fifth of these elements states that the backdown procedures of fishing vessels on the sets of their purse seine nets must be completed "no later than 30 minutes *before* sundown." § 1413(a)(2)(B)(v) (emphasis added).

In *Defenders of Wildlife*, a divided panel of this court upheld one of the Secretary's regulations permitting completion of backdown procedures up to one half-hour *after* sundown. 330 F.3d at 1367; 50 C.F.R. § 216.24(c)(6)(iii). The majority reached this result by reading section 1413(a)(2)(C), which allows the Secretary to "make such adjustments as may be appropriate" to subparagraph (B), as empowering the Secretary to alter the statutory language of subparagraph (B). This reading of section 1413(a)(2)(C), though a tenable construction based on the language of the statute, runs squarely into the prohibition of *Clinton*.

The Secretary's regulation contravenes the plain text of subparagraph (B), which instructs the Secretary on the minimum regulatory requirements of the IDCPA. Following the promulgation of the regulation at issue, and this court's decision upholding it, fishing vessels may now delay backdown procedures until one-half hour after sundown. The mandate of subparagraph (B)(v) has effectively disappeared, consumed by subparagraph (C). Following this logic, there is no reason that any provision of subparagraph (B) should withstand regulatory amendment. The contents of subparagraph (B), however, remain a part of the Act. Having been placed there by Congress, only Congress may remove them. In denying *en banc* review, we leave in place a decision approving the triumph of regulation over legislation.

A regulation eviscerating the legal force of the backdown procedures in subparagraph (B) is no less an amendment to the IDCPA than the striking of clauses found unconstitutional in *Clinton*. Like the Balanced Budget Act of 1997 in *Clinton*, the IDCPA was: (1) "approved by a majority of the Members of the House of Representatives" in a form identical to the enacted statute; (2) approved in the same form by the Senate; and (3) signed into law by the President. *Clinton*, 524 U.S. at 448, 118 S.Ct. 2091. Upon completion of these procedures, the contents of the IDCPA in their entirety became law. Art. I, § 7. Also as with the Balanced Budget Act, a provision of the IDCPA no longer carries legal force due exclusively to executive action. By my understanding of the Constitution and the Supreme Court's holding in *Clinton*, this result may only be achieved through the procedures outlined in Article 1, § 7. The apparent authorization of a contrary result by subparagraph (C) is of no consequence. *Clinton*, 524 U.S. at 446–47, 118 S.Ct. 2091.

Much as Congress is forbidden to amend the Constitution with ordinary legislation, an executive agency may not amend legislation with regulation. This is the import of Article I, § 7 and of *Clinton*. The court's denial of *en banc* review today permits a new form of uneasy and illegitimate partnership between Congress and executive agencies that has previously been rejected by the United States Supreme Court. I therefore respectfully dissent.